1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ALANA GUTIERREZ,                      Case No. 2:24-cv-02434-DC-CSK

12              Plaintiff,

13        v.                               ORDER AND FINDINGS AND
                                           RECOMMENDATIONS GRANTING IN
14   KENDAL NUTRICARE USA LLC,             PART AND DENYING IN PART
                                           DEFENDANT'S MOTION TO DISMISS
15              Defendant.
                                           (ECF No. 15)
16

17

18        Pending before the Court is Defendant Kendal Nutricare USA LLC's motion to

19   dismiss Plaintiff Alana Gutierrez's Complaint.[1] (ECF No. 15.) Plaintiff brings her claims

20   individually and on behalf of all persons similarly situated. (ECF No. 1.) Pursuant to

21   Local Rule 230(g), the District Judge submitted the motion upon the record and briefs on

22   file. (*See* ECF Nos. 15, 20, 27, 30.) Also pending before the Court are Defendant's

23   requests for judicial notice. (*See* ECF Nos. 16, 17, 21, 22, 29, 28, 31, 32.)

24        For the reasons that follow, the Court RECOMMENDS that the motion to dismiss

25   be GRANTED IN PART and DENIED IN PART. The Court ORDERS that the requests

26

27   [1]  This matter was referred to the undersigned by the District Judge (ECF No. 38) and
     proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and
28   Local Rule 302(c).

                                        1

1  for judicial notice be GRANTED IN PART and DENIED IN PART.

2  **I.    BACKGROUND**

3      **A.    Factual Background[2]**

4      Plaintiff brings this putative class action individually and on behalf of all persons

5  similarly situated against Defendant. Compl. ¶ 1 (ECF No. 1). Plaintiff is a California

6  citizen, and Defendant is a limited liability company organized under the laws of the

7  State of Delaware and headquartered in Boulder, Colorado. *Id.* ¶¶ 5-6. Plaintiff alleges

8  Defendant used deceptive and unlawful practices in labeling and marketing their

9  Kendamil Toddler Drink ("the Product"). *Id.*

10      The Product is labeled with the intended age for use of the Product, which is 12-

11  36 months. *Id.* ¶ 14. The Product is sold in the baby food aisle in grocery stores,

12  alongside infant formulas. *Id.* ¶ 36. Exhibit 2 to Plaintiff's Complaint contains pictures of

13  the labels for the Product:

14
15
16
17
18   
19
20
21
22
23
24
25

26    [2]  These facts primarily derive from the complaint (ECF No. 1), which are construed in
the light most favorable to Plaintiff as the non-moving party. *Faulkner v. ADT Sec.*

27  *Servs.*, 706 F.3d 1017, 1019 (9th Cir. 2013). However, the Court does not assume the
truth of any conclusory factual allegations or legal conclusions. *Paulsen v. CNF Inc.*, 559

28  F.3d 1061, 1071 (9th Cir. 2009).

Compl., Exh. 2 at 3-4 (ECF No. 1-2). On the front label, the Product contains the

following statements ("Product Statements"):  "milk-based powder with iron," "DHA +

ARA," "WITH HMOs," and "WITH MFGM." *Id.* ¶ 17. The back label of the Product

includes the following statements:  "**MFGM** Naturally present in our **whole milk**," "**HMOs**

Our unique **HMO blend**," "**PREBIOTIC** With dual **GOS + FOS prebiotics**," "**IMMUNE**

**SUPPORT** Vitamin C," "**BRAIN HEALTH** DHA, Iron, Iodine," and "**GROWTH** Calcium,

Vitamins D + E." *Id.* ¶ 18 (emphasis in original).

Plaintiff alleges these statements are nutrient content claims, which are unlawful

because the Product is intended for children under two years of age. *Id.* ¶ 34; *see id.*

¶¶ 38-39. Plaintiff alleges that Defendant misbranded the Product by making nutrient

content claims that are "strictly prohibited" by the Food and Drug Administration ("FDA"),

and by misleading purchasers into believing that its Product provides physical health

benefits in order to induce parents into purchasing the Product. *Id.* ¶ 37. Plaintiff also

alleges the claims on the label mislead reasonable consumers into believing the Product

will provide physical health benefits for their children, but the Product is nutritionally and

developmentally harmful for children under two years old. *Id.* ¶¶ 42-43, 58.

Plaintiff regularly shops at stores and online retailers where the Product and other

baby food products are sold. *Id.* ¶ 72. Plaintiff purchased the Product from Target

locations for her one-year-old child for about three months beginning in February 2024,

totaling about two to four cans. *Id.* ¶¶ 5, 65, 66. Plaintiff viewed the Product's packaging

and advertising prior to first purchasing the Product, and relied on the representations on

the packaging that the Product provides physical health benefits for children under two

years of age. *Id.* ¶ 68. Plaintiff states she purchased the product because of the label's

alleged "nutrient content claims," and paid more money for the Product than she would

have paid if the Product did not include these claims. *Id.* ¶ 70.

Plaintiff brings this action as a putative class action on behalf of the following

Class:  "All persons in the State of California who purchased the Product between 2021

3

1   and the present"; and the California Consumer Legal Remedies Act ("CLRA") Sub-Class:

2   "All members of the Class who are 'consumers' within the meaning of California Civil

3   Code § 1761(d)." *Id.* ¶ 74.

4        Plaintiff brings the following claims:  (1) violation of the CLRA, Cal. Civ. Code

5   § 1750, et seq., individually and on behalf of the CLRA sub-class; (2) violation of

6   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.,

7   individually and on behalf of the Class; (3) violation of California's False Advertising Law,

8   Cal. Bus. & Prof. Code § 17500, et seq., individually and on behalf of the Class;

9   (4) common law fraud, deceit, and/or misrepresentation, individually and on behalf of the

10   Class; (5) unjust enrichment, individually and on behalf of the Class; and (6) violation of

11   California's False Advertising Law, Cal. Bus. & Prof. Code § 17501, individually and on

12   behalf of the Class.

13       **B.**    **Procedural Background**

14        Plaintiff initiated this action on September 6, 2024 by filing a Complaint. (ECF No.

15   1.) On October 21, 2024, the Court granted the parties' stipulation for an extension of

16   time for Defendant to respond to the Complaint and proposed briefing schedule for an

17   anticipated motion to dismiss. (ECF Nos. 8, 9.) On December 10, 2024, Defendant filed

18   a motion to dismiss. (*See* ECF Nos. 15, 20, 27.) Plaintiff filed an opposition on January

19   10, 2025 (ECF No. 20) and Defendant filed a reply on January 31, 2025 (ECF No. 27).

20   On the same day, Defendant filed a request for judicial notice in support of its motion to

21   dismiss. (ECF No. 16.) On December 30, 2024 and January 13, 2025, Defendant filed

22   corrected exhibits included in the request for judicial notice. (ECF Nos. 17, 22.) Plaintiff

23   partially opposed the request for judicial notice, and Defendant filed a reply. (ECF Nos.

24   21, 29.) On January 31, 2025, Defendant filed a supplemental request for judicial notice

25   in support of its reply to the motion to dismiss. (ECF No. 28.) Plaintiff opposed the

26   supplemental request for judicial notice. (ECF No. 31.)

27        On February 7, 2025, the District Judge vacated the pending hearing pursuant to

28   Local Rule 230(g). (ECF No. 30.) On August 1, 2025, the District Judge referred this

1  motion to the undersigned for issuance of findings and recommendations. (ECF No. 38.)

2  **II.    LEGAL STANDARDS**

3  **A.    Failure to State a Claim under Rule 12(b)(6)**

4  A claim may be dismissed because of the plaintiff's "failure to state a claim upon

5  which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim if

6  it either lacks a cognizable legal theory or sufficient facts to support a cognizable legal

7  theory. *Mollett v. Netflix, Inc.,* 795 F.3d 1062, 1065 (9th Cir. 2015). When considering

8  whether a claim has been stated, the court must accept the well-pleaded factual

9  allegations as true and construe the complaint in the light most favorable to the non-

10  moving party. *Id.* However, the court is not required to accept as true conclusory factual

11  allegations contradicted by documents referenced in the complaint, or legal conclusions

12  merely because they are cast in the form of factual allegations. *Paulsen*, 559 F.3d at

13  1071.

14  If the court finds that a complaint should be dismissed for failure to state a claim, it

15  has discretion to dismiss with or without leave to amend. *Lopez v. Smith*, 203 F.3d 1122,

16  1126-30 (9th Cir. 2000). Leave to amend should be granted if it appears possible that

17  the defects in the complaint could be corrected. *Id.* at 1130-31; *see also Cato v. United*

18  *States,* 70 F.3d 1103, 1106 (9th Cir. 1995).

19  **B.    Judicial Notice**

20  When reviewing a motion to dismiss, courts may consider undisputed facts

21  contained in judicially noticeable documents under Federal Rule of Evidence 201 without

22  converting the motion to one for summary judgment. *United States v. Ritchie*, 342 F.3d

23  903, 908 (9th Cir. 2003). This includes undisputed facts from documents attached to the

24  complaint or those on which the complaint "necessarily relies." *Marder v. Lopez*, 450

25  F.3d 445, 448 (9th Cir. 2006); *see Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th

26  Cir. 2012) (approving judicial notice of documents from judicial proceedings).

27  **III.    DISCUSSION**

28  Plaintiff brings the following claims:  (1) violation of the CLRA, individually and on

behalf of the CLRA sub-class; (2) violation of the UCL, individually and on behalf of the Class; (3) violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq., individually and on behalf of the Class; (4) common law fraud, deceit, and/or misrepresentation, individually and on behalf of the Class; (5) unjust enrichment, individually and on behalf of the Class; and (6) violation of California's False Advertising Law, Bus. & Prof. Code § 17501, individually and on behalf of the Class. Defendant moves to dismiss the Complaint for failure to state a claim.

### A.    Requests for Judicial Notice

Defendant has filed two requests for judicial notice. The first is in support of the motion to dismiss (ECF Nos. 16, 17, 22) and the second is in support of Defendant's Reply (ECF No. 28). In the first request, Defendant seeks judicial notice of the complete product label for Kendamil Toddler Drink (Exhibit A), the pre-litigation Consumer Legal Remedies Act letter dated July 3, 2024 from Plaintiff's attorney to Defendant (Exhibit B), and a letter dated August 5, 2024 from an attorney for Defendant to Plaintiff's attorney, responding to the pre-litigation letter (Exhibit C).[3] (ECF Nos. 16, 17, 22.) Defendant seeks judicial notice of the product label and letters because they argue they are not subject to reasonable dispute. Def. First RJN at 1 (ECF No. 16). Defendant also seeks to incorporate each document by reference. *Id.* Plaintiff opposed Defendant's request regarding the pre-litigation letter and response, but did not oppose the complete product label. (ECF No. 21.)

In the second request, Defendant seeks judicial notice of the complaint filed in *Guiterrez v. Abbot Labs.*, No. 2:24-cv-02427-TLN-SCR (E.D. Cal.) (Exhibit 1); the complaint filed in *Garland v. Mead Johnson & Co.*, 2:24-cv-01168-L-SBC (S.D. Cal.) (Exhibit 2); and the nutrition facts panel and ingredients list from the product label for Kendamil Toddler Drink (Exhibit 3). Def. Second RJN (ECF No. 28). Plaintiff opposed judicial notice of the two complaints, but not of the product label. (ECF No. 31.)

---

[3]   After filing the first request for judicial notice (ECF No. 16), Defendant filed a corrected Exhibit A (ECF No. 17) and a corrected Exhibit B (ECF No. 22).

1    The Court declines to take judicial notice of the two pre-litigation letters (Exhibits

2    B and C). These letters and their contents are not matters of public records, or facts that

3    are not subject to reasonable dispute. *See* Fed. R. Evid. 201(b).

4    The Court will take judicial notice of the two complaints (Exhibits 1 and 2) filed in

5    federal court. *See Harris*, 682 F.3d at 1132 (the court may take judicial notice of

6    documents on file in federal or state courts). Taking judicial notice of these documents

7    does not mean accepting the allegations or facts contained as true. *See Khoja v.*

8    *Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("Just because the

9    document itself is susceptible to judicial notice does not mean that every assertion of fact

10   within that document is judicially noticeable for its truth.").

11   Alternatively, Defendant argues that the Product label and Nutrition Facts panel

12   and ingredients list from the Product label (First RJN Exhibit A and Second RJN Exhibit

13   3) are incorporated into the Complaint by reference where the Complaint relies

14   extensively on the Product label and attaches a portion of the label, but not all of the

15   label attached is visible. Def. First RJN at 2. The Court agrees with Defendant.

16   Incorporation-by-reference is a judicially created doctrine that treats certain documents

17   as though they are part of the complaint itself. *Khoja*, 899 F.3d at 1002. The doctrine

18   prevents plaintiffs from selecting only portions of documents that support their claims,

19   while omitting portions that may weaken their claims. *Id.* This doctrine permits a court,

20   when considering a Rule 12(b)(6) motion, to take into account documents "whose

21   contents are alleged in a complaint and whose authenticity no party questions[.]" *Knievel*

22   *v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citation omitted).

23   Here, Plaintiff does not oppose Defendant's request to incorporate the Product

24   label and Nutrition Facts panel and ingredients list from the Product label (First RJN

25   Corrected Exhibit A and Second RJN Exhibit 3) by reference. (*See* ECF Nos. 21, 31.)

26   / / /

27   / / /

28   / / /



Def. First RJN, Corrected Exh. A.



Def. Second RJN, Exh. 3.

1    Further, Plaintiff discusses the Product label at length in the Complaint and

2    attaches portions of the label to the Complaint. *See generally* Compl. & Exh. 2.

3    Accordingly, the Court will consider Defendant's Corrected Exhibit A and Exhibit 3[4]

4    under the doctrine of incorporation-by-reference. *See Khoja*, 899 F.3d at 1002; *Knievel*,

5    393 F.3d at 1076. Defendant's request for judicial notice as to the product label is denied

6    as moot.

7    **B.    Legal and Regulatory Framework**

8    The Federal Food, Drug, and Cosmetic Act ("FDCA") was enacted in 1983 and

9    prohibits the misbranding of food. *See* 21 U.S.C. §§ 301, et seq.; *McMorrow v. Mondelez*

10   *Int'l, Inc.*, 2018 WL 3956022, at *4 (S.D. Cal. Aug. 17, 2018). The FDA enforces the

11   FDCA and develops regulations governing the labeling of food products. *Id.* Relevant to

12   this case is the regulatory scheme relating to food branding and labeling. The Nutritional

13   Labeling and Education Act ("NLEA") amended the FDCA to "establish[] uniform food

14   labeling requirements, including the familiar and ubiquitous Nutrition Facts Panel found

15   on most food packages." *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 664 (9th Cir. 2014).

16   The "NLEA also provides that no state may 'directly or indirectly establish any

17   requirement for the labeling of food that is not identical' to the federal requirements." *Id.*

18   at 664-65 (quoting 21 U.S.C. § 343-1(a)(5)).

19   The purpose of the NLEA was to "clarify and to strengthen [FDA's] authority to

20   require nutrition labeling on foods, and to establish the circumstances under which

21   claims may be made about the nutrients in foods." *McMorrow*, 2018 WL 3956022, at *4

22   (quoting *Nat'l Council for Improved Health v. Shalala*, 122 F.3d 878, 880 (10th Cir.

23   1997)). The NLEA made several changes to the FDCA. *Id.* It expanded the coverage of

24   nutrition labeling requirements, changed the form and substance of ingredient labeling

25   on packages, imposed limitations on health claims, and standardized the definitions of

26   ---

[4]   It appears that the version of RJN Exhibit 3 filed included some highlighting within the
27   PDF file. *See* Def. Second RJN, Exh. 3. As there is no indication in the RJN that the
     highlighting is part of the original Nutrition Facts panel and ingredients list portion of the
28   Product label, the Court does not consider the highlighting.

1  all nutrient content claims. *Id.*; *see Lilly*, 743 F.3d at 664.

2          Generally, a "nutrient content claim" is a statement that characterizes the level of

3  a nutrient in a food. *Howard v. Hain Celestial Grp., Inc.*, 655 F. Supp. 3d 941, 943 (N.D.

4  Cal. 2023) (citing 21 C.F.R. § 101.13(b)). A nutrient content claim can either be an

5  express or implied claim. An express nutrient content claim is "any direct statement

6  about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100

7  calories.'" 21 C.F.R. § 101.13(b)(1). An implied nutrient content claim is any claim that

8  (i) "[d]escribes the food or an ingredient therein in a manner that suggests that a nutrient

9  is absent or present in a certain amount (e.g., 'high in oat bran')"; or (ii) "[s]uggests that a

10  food, because of its nutrient content, may be useful in maintaining healthy dietary

11  practices, where there is also implied or explicit information about the nutrition content of

12  the food (e.g., 'healthy')." 21 C.F.R. § 101.13(b)(2).

13          The general rule is that nutrient content claims are prohibited on food labels,

14  unless they are authorized by FDA regulations. *See Reid v. Johnson & Johnson*, 780

15  F.3d 952, 959 (9th Cir. 2015). Authorized nutrient content claims include statements

16  about the amount or percentage of a nutrient that are consistent with the labeling

17  regulations, similar statements that include a disclaimer, or statements that do not

18  characterize the level of a nutrient and are not false or misleading. *Id.* at 959-60 (citing

19  21 C.F.R. § 101.13(i)). Further, FDA regulations require inclusion of a "nutrition label." *Id.*

20          The relevant federal regulation at issue in this case prohibits "nutrient content

21  claims . . . on food intended for use by infants and children less than 2 years of age

22  unless the claim is specifically provided for in parts 101, 105, or 107 of this chapter."

23  21 C.F.R. § 101.13(b)(3); *see Howard*, 655 F. Supp. 3d 943 (citing 21 C.F.R.

24  § 101.13(b)(3)). In setting out its reason for the prohibition of nutrient content claims on

25  food intended for use by infants and children less than 2 years of age, the FDA

26  explained that what is good for adults may not be so good for babies. *See* Food

27  Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms,

28  56 Fed. Reg. 60421, 60424 (Nov. 27, 1991). The FDA pointed to a general agreement

1    among associations of health professionals that fat and cholesterol should not be

2    restricted in the diets of infants. *Id.* The FDA also said that it lacked evidence that

3    restricting nutrients like sodium or increasing intake of nutrients such as fiber would be

4    beneficial for infants and toddlers. *Id.* It therefore concluded that until it had such

5    evidence, it was prohibiting nutrient content claims on food products intended for babies

6    under two years old. *Id.*

7        The Sherman Law, California Health & Safety Code §§ 109875 et seq., explicitly

8    adopts all federal food and nutrition labeling requirements as its own:  "All food labeling

9    regulations and any amendments to those regulations adopted pursuant to the federal

10   act, in effect on January 1, 1993, or adopted on or after that date shall be the food

11   labeling regulations of this state." Cal. Health & Saf. Code § 110100; *see Davidson v.*

12   *Sprouts Foods, Inc.*, 106 F.4th 842, 846 (9th Cir. 2024) ("*Davidson*"). Therefore, the

13   federal regulations governing nutrient content claims articulated in 21 C.F.R. § 101.13

14   are the regulations governing nutrient content claims in California. The FDCA does not

15   preempt claims under the Sherman Law because California's requirements are identical

16   to their federal counterparts. *Id.* at 850.

17       **C.    Unfair Competition Law "Unlawful" Claim (Claim 2)**

18       Plaintiff alleges Defendant engaged, and continues to engage, in unlawful

19   practices. Compl. ¶ 100. The UCL prohibits "any unlawful, unfair[,] or fraudulent business

20   act or practice." Cal. Bus. & Prof. Code § 17200. The statute is "violated where a

21   defendant's act or practice violates any of the [UCL's] prongs." *Davis v. HSBC Bank*

22   *Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). A plaintiff may pursue a claim under

23   California's UCL via any or all of three prongs:  the "unlawful" prong, which bars

24   practices that are forbidden by any other law; the "unfair" prong, which bars unfair

25   conduct; and the "fraudulent" prong, which bars practices that are likely to deceive the

26   public. *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1100 (N.D. Cal.

27   2021).

28       The unlawful prong of the UCL "'borrows" violations of other laws and treats them

1  as unlawful practices that are independently actionable. *Martinez v. Welk Grp., Inc.*, 907

2  F. Supp. 2d 1123, 1139 (S.D. Cal. 2012). The unlawful prong includes business

3  practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory,

4  regulatory, or court-made." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d

5  1035, 1043-44 (9th Cir. 2010) (citation omitted). Where a plaintiff cannot state a claim

6  under a "borrowed" law, he or she cannot state a claim under the UCL's unlawful prong

7  either. *See Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012) ("A

8  UCL claim must be dismissed if the plaintiff has not stated a claim for the predicate acts

9  upon which [s]he bases the claim.").

10              1.    Nutrient Content Claims

11         Defendant moves to dismiss on the grounds that the Product Statements are not

12  unlawful "nutrient content claims." Def. Mot. at 8 (ECF No. 15).

13         There are ten Product Statements that Plaintiff alleges are nutrient content claims:

14  1. "milk-based powder with iron"

15  2. "DHA + ARA"

16  3. "WITH HMOs"

17  4. "WITH MFGM"

18  5. "**MFGM** Naturally present in our **whole milk**"

19  6. "**HMOs** Our unique **HMO blend**"

20  7. "**PREBIOTIC** With dual **GOS + FOS prebiotics**"

21  8. "**IMMUNE SUPPORT** Vitamin C"

22  9. "**BRAIN HEALTH** DHA, Iron, Iodine"

23  10. "**GROWTH** Calcium, Vitamins D + E"

24  *See* Compl. ¶¶ 38-39 (emphasis in original).

25         First, Defendant contends, and Plaintiff does not appear to dispute, that none of

26  the Product Statements are express nutrient content claims. *See* Def. Mot. at 10; Pl.

27  Opp'n at 4-5 (ECF No. 20). The Court agrees. None of the Product Statements are

28  express nutrient content claims because they do not provide a "direct statement about

12

1    the level (or range) of a nutrient in the food." 21 C.F.R. § 101.13(b)(1).

2         The Court therefore considers whether each of the statements are implied nutrient

3    content claims. Statements that a product contains certain nutrients, without

4    characterizing the amount of nutrients or suggesting that a food has health benefits

5    because of the nutrients are not nutrient content claims. *See, e.g.*, *Sanchez v. Nurture,*

6    *Inc.*, 626 F. Supp. 3d 1107, 1118 (N.D. Cal. 2022) ("*Sanchez I*") (finding on a motion to

7    dismiss that statements that "Omega-3s (ALA) from Chia seeds to help your toddler get

8    the most out of every bite. Here's to a happy & healthy start!" and "Beta-Glucan helps

9    support your tot's immune system. Prebiotic Fiber helps support digestive health. Here's

10   to a happy & healthy start!" are not nutrient content claims because they describe the

11   function of the nutrient, not the product itself); *Krommenhock v. Post Foods, LLC*, 2018

12   WL 1335867, at *9 (N.D. Cal. Mar. 18, 2018) ("*Krommenhock I*") (finding on motion to

13   dismiss "Digestive Health" not to be an implied nutrient content claim because it does not

14   indicate a specific level of fiber); *Ryan v. Good Fat Co. Ltd*., 2023 WL 2714933, at *1

15   (N.D. Cal. Mar. 30, 2023) (finding on motion to dismiss that the statement "Love Good

16   Fats" is not a nutrient content claim because it suggests something about the quality of

17   fat, but not the level of fat); *Effinger v. Ancient Organics LLC*, 657 F. Supp. 3d 1290,

18   1298-99 (N.D. Cal. 2023) (finding on motion to dismiss that the statement "Eat Good Fat"

19   does not suggest the product is "low" in fat, but that the Product has "good" fat, and

20   "regulations apply only to statements about the *amount* of fat in a product—not the fat's

21   quality or value").

22        However, statements that suggest a nutrient is absent, a nutrient is present in a

23   certain amount, or suggest the food may be useful in maintaining healthy dietary

24   practices, are implied nutrient content claims. *See, e.g.*, *Garland v. Mead Johnson &*

25   *Co.*, 2025 WL 1908401, at *4-5 (S.D. Cal. July 10, 2025) (finding on motion to dismiss

26   that phrases "IMMUNE HEALTH dual prebiotics & Vitamins," "Supports BRAIN

27   DEVELOPMENT Omega-3 DHA & Iron," and "22 NUTRIENTS to help support growth"

28   were implied nutrient content claims that "couple the existence of nutrients with some

1   claim that the listed nutrients are helpful for health"); *Burton v. Gerber Products Co.*,

2   2014 WL 172111, at *12 n.7 (N.D. Cal. Jan. 15, 2014) (finding on motion to dismiss that

3   logo, by highlighting certain nutrients, "plausibly intends to convey that those nutrients

4   are present in the product in large enough amounts to merit a mention on the front of the

5   package"); *Howard v. Gerber Prods. Co.*, 2023 WL 2716583, at *1-2 (N.D. Cal. Mar. 29,

6   2023) ("*Gerber I*") (finding on motion to dismiss that phrases "Grow Strong,"

7   "Wonderfoods awaken toddler's love for nutritious foods," and "Gerber Natural for

8   Toddlers brings the goodness of naturally nutritious fruits selected and made with strict

9   quality standards just for toddlers" were implied nutrient content claims because "Grow

10  Strong" was alongside "2 grams of Protein" and because the statements suggest

11  Gerber's products are useful in maintaining healthy dietary practices); *LeGrand v. Abbott*

12  *Labs.*, 655 F. Supp. 3d 871, 888-89 (N.D. Cal. 2023) (finding on motion to dismiss that

13  statements "Immune . . . Muscle . . . Heart . . . Digestion . . . Bone" on the back of

14  packaging were implied nutrient content claims because they were followed by nutrient

15  content, such as "Excellent Source of Zinc, Vitamin A . . .").

16      Courts also consider the context and proximity of claims in relation to other

17  statements when determining whether a statement is an implied nutrient content claim.

18  *See LeGrand*, 655 F. Supp. 3d at 888 ("[W]hile the 'magic words' that create an implied

19  nutrient claim do not need to be directly adjacent to the discussion of a nutrient to create

20  an implied nutrient content claim, there must be connection given the words, their

21  placement, and their context."); *id.* (finding on motion to dismiss that "advanced nutrition

22  shake," "therapeutic nutrition shake," "nutrition drink," and "nutrition powder" on the

23  labels for Ensure products are not nutrient content claims because they are not placed in

24  close enough proximity to the underlying nutrient claims to be considered nutrient

25  content); *Broussard v. Dole Packaged Foods, LLC*, 2024 WL 1540221, at *8 (N.D. Cal.

26  Apr. 8, 2024); *see also Gutierrez v. Abbott Labs.*, 2025 WL 2307847, at *4 (E.D. Cal.

27  Aug. 11, 2025) (finding on motion to dismiss that phrases "✓ IMMUNE SUPPORT,"

28  "✓ BRAIN DEVELOPMENT," and "✓ DIGESTIVE HEALTH," "DHA, LUTEIN, VITAMIN

14

1  E," and "2 servings have: 28 Important Nutrients for Growth and Development" were

2  implied nutrient content claims because they were "close enough in proximity" when

3  "read in connection" to at statement identifying a percentage daily value of certain

4  vitamins).

5      The Court next addresses each Product Statement at issue.

6              *a.*      *Product Statement 1:  Not Nutrient Content Claim*

7      Product Statement 1 is "milk-based powder with iron." Compl., Exh. 2; Def. First

8  RJN, Corrected Exh. A. The Court finds Statement 1 is not an implied nutrient content

9  claim. This statement merely states that there is iron included in the Product, but does

10  not indicate how much or suggest health benefits because of the nutrients. *See*

11  *Krommenhock I*, 2018 WL 1335867, at *9; *Effinger*, 657 F. Supp. 3d at 1298-99. Further,

12  it is not connected to the back panel and is not used in context with any other

13  Statements. *See LeGrand*, 655 F. Supp. 3d at 888; *Broussard*, 2024 WL 1540221, at *8.

14              *b.*      *Product Statements 2-4:  Not Nutrient Content Claims*

15      Product Statements 2-4 are (2) "DHA + ARA"; (3) "WITH HMOs"; and (4) "WITH

16  MFGM." Compl., Exh. 2; Def. First RJN, Corrected Exh. A. The Court finds these

17  Statements are not implied nutrient content claims because they merely list the nutrient

18  included in the product, and do not include a specific amount of the nutrient or suggest

19  health benefits because of the nutrients. *See Krommenhock I*, 2018 WL 1335867, at *9;

20  *Effinger*, 657 F. Supp. 3d at 1298-99. Further, these Statements are on the front label

21  and do not appear connected or intended to be considered in the same context as

22  Statements 8-10 on the back label. *See LeGrand*, 655 F. Supp. 3d at 888; *Broussard*,

23  2024 WL 1540221, at *8.

24              *c.*      *Product Statements 5-7:  Not Nutrient Content Claims*

25      Product Statements 5-7 are (5) "**MFGM** Naturally present in our **whole milk**";

26  (6) "**HMOs** Our unique **HMO blend**"; and (7) "**PREBIOTIC** With dual **GOS + FOS**

27  **prebiotics**." Compl., Exh. 2; Def. First RJN, Corrected Exh. A (emphasis in original). The

28  Court finds these Statements are not implied nutrient content claims. These claims do

1  not describe an amount of a nutrient or imply healthy dietary practices. Rather, "**MFGM**

2  Naturally present in our **whole milk**," "**HMOs** Our unique **HMO blend**," and "**PREBIOTIC**

3  With dual **GOS + FOS prebiotics**" describe that a nutrient is present in the Product, but

4  do not describe any nutrient quantity or suggest health benefits because of the nutrients.

5  *See Krommenhock I*, 2018 WL 1335867, at *9; *Effinger*, 657 F. Supp. 3d at 1298-99.

6  Further, these Statements are included in a separate graphic and do not appear

7  intended to be considered in the same context as statements 8-10. *See LeGrand*, 655 F.

8  Supp. 3d at 888; *Broussard*, 2024 WL 1540221, at *8.

9          *d.    Product Statements 8-10:  Implied Nutrient Content Claims*

10         Product Statements 8-10 are (8) "**IMMUNE SUPPORT** Vitamin C"; (9) "**BRAIN**

11  **HEALTH** DHA, Iron, Iodine"; and (10) "**GROWTH** Calcium, Vitamins D + E." Compl.,

12  Exh. 2; Def. First RJN, Corrected Exh. A (emphasis in original). The Court finds these

13  Statements are implied nutrient content claims. Each Statement suggests the product is

14  useful in maintaining healthy dietary practices, and are connected to a nutrient. *See*

15  *Garland*, 2025 WL 1908401, at *4-5; *Burton*, 2014 WL 172111, at *12 n.7; *Gerber I*,

16  2023 WL 2716583, at *1-2; *LeGrand*, 655 F. Supp. 3d at 888-89. "Immune Support" is

17  right above "Vitamin C," "Brain Health" is right above "DHA, Iron, and Iodine," and

18  "Growth" is right above "Calcium, Vitamins D + E." All three phrases are included in the

19  same graphic on the Product. All three phrases also include a plus sign connected to the

20  phrase "Supports normal immune function, cognitive function and physical growth,"

21  which is right next to the graphic. These phrases are placed close enough in proximity

22  on the Product that they are read together. *See LeGrand*, 655 F. Supp. 3d at 888-89.

23  Further, the phrases "immune support," "brain health," and "growth" are all terms that

24  suggest healthy dietary practices.[5] Therefore, Product Statements 8-10 are implied

---

25  [5]  Plaintiff also argues that to the extent these Product Statements are ambiguous, they
26  should be considered with the ingredient list and back label. Pl. Opp'n at 5. Because the
    Court finds these Statements are implied nutrient content claims, the Court declines to
27  address this argument. The Court notes, however, that it does not appear the cases
    Plaintiff cited support this argument as neither discuss nutrient content claims. *See id.*
28  (citing *Zimmerman v. L'Oreal USA, Inc.*, 2023 WL 4564552 (N.D. Cal. July 17, 2023) and

1  nutrient content claims.

2  e.    Structure/Function Argument

3  Defendant also argues the statements at issue are not nutrient content claims but

4  are "structure or function claims" that describe the function of the nutrients, and are

5  permitted. Def. Mot. at 12 (citing cases referencing 21 C.F.R. § 101.93). A structure and

6  function claim is permitted on dietary supplement labels, and includes "statements that

7  describe the role of a nutrient or dietary ingredient intended to affect the structure or

8  function in humans or that characterize the documented mechanism by which a nutrient

9  or dietary ingredient acts to maintain such structure or function, provided that such

10  statements are not disease claims[.]" 21 C.F.R. § 101.93(f). In order to make a

11  structure/function claim on a product, a manufacturer must establish three factors:

12  (1) "have substantiation that the statement is truthful and not misleading," (2) "[t]he

13  statement must contain a prominent disclaimer that the FDA has not evaluated the

14  statement and the product" is not intended to "diagnose, treat, cure, or prevent any

15  disease," and (3) "[t]he statement itself may not 'claim to diagnose, mitigate, treat, cure,

16  or prevent" disease." *Greenberg v. Target Corp.*, 985 F.3d 650, 654 (9th Cir. 2021)

17  (quoting 21 U.S.C. § 343(r)(6)(B)-(C)).

18  Here, Defendant's structure and function claim fails because it has not argued the

19  Product is a dietary supplement. *See Gerber I*, 2023 WL 2716583, at *2 n.2 (noting that

20  21 C.F.R. § 101.93(f) applies only to dietary supplements); *see also Krommenhock v.*

21  *Post Foods, LLC*, 334 F.R.D. 552, 571 n.14 (N.D. Cal. 2020) ("*Krommenhock II*") (noting

22  a structure/function claim is "differently regulated" than an implied nutrient claim); *but see*

23  *Andrade-Heymsfield v. Danone US, Inc.*, 2019 WL 3817948, at *7 (S.D. Cal. Aug. 14,

24  2019) (finding on motion to dismiss that "nutrients that help maintain healthy bones" is a

25  permissible structure/function claim that describes the role of the nutrient or

26  characterizes the means by which a nutrient acts to maintain such structure or function

27  _____

28  *McGinity v. Procter & Gambel Co.*, 69 F.4th 1093, 1097-99 (9th Cir. 2023)).

17

1  and noting the FDA interprets structure/function claims consistently across supplements

2  and conventional foods). Even if a structure and function claim were permitted for the

3  Product, Defendant has not attempted to demonstrate that its Product meets the three

4  factors outlined in *Greenberg*. Accordingly, the Court finds Defendant has not

5  demonstrated that the Product Statements are permissible structure/function claims.

6                    *f.      Conclusion*

7         In sum, the Court finds Statements 1-7 are not nutrient content claims and Plaintiff

8  therefore fails to state a UCL unlawful claim as to Statements 1-7. The Court further

9  finds that Plaintiff has sufficiently pled that Statements 8-10 are implied nutrient content

10  claims. Because nutrient content claims are not permitted on food intended for use by

11  infants and children less than 2 years of age, the Product is intended for use for infants

12  and children 12-36 months old, and Plaintiff has sufficiently pled that Statements 8-10

13  are implied nutrient content claims, Defendant's motion to dismiss should be denied on

14  Plaintiff's UCL unlawful claim as to Statements 8-10.

15                    2.    Special Dietary Use

16         21 C.F.R. § 101.13(b)(3) states that with some exceptions, "no nutrient content

17  claims may be made on food intended specifically for use by infants and children less

18  than 2 years of age unless the claim is specifically provided for in parts 101, 105, or

19  107[.]" Defendant argues that if the Product Statements *are* nutrient content claims, they

20  are not prohibited by 21 C.F.R. § 101.13(b)(3) because they are claims included in part

21  105, which is an exception. Def. Mot. at 13. Section 101.13(b)(3) also excludes claims

22  provided for in parts 101 and 107, but Defendant does not make any argument relating

23  to these parts. *See* Def. Mot. Plaintiff argues that the Product is not exempt, and this

24  argument is for the trier of fact. Pl. Opp'n at 7-8. Plaintiff states Defendant did not identify

25  any dietary need in its motion. Plaintiff also argues that Defendant's Product targets

26  babies, toddlers, and infants aged 12-36 months, which creates an ambiguity as to

27  which age group it is targeting and whether a dietary need actually exists. *Id.*

28         Part 105 includes 21 C.F.R. § 105.3, which is a definition section. Section

                    18

1    105.3(a)(1) defines "special dietary uses" as particular uses of foods, including "[u]ses

2    for supplying particular dietary needs which exist by reason of age, including but not

3    limited to the ages of infancy and childhood"; and "[u]ses for supplementing or fortifying

4    the ordinary or usual diet with any vitamin, mineral, or other dietary property. Any such

5    particular use of a food is a special dietary use, regardless of whether such food also

6    purports to be or is represented for general use." 21 C.F.R. § 105.3(a)(1)(ii), (iii). But

7    section 105.3(a)(1) does not discuss a specific claim, rather it defines the term "special

8    dietary uses." Neither party cites any case law supporting their respective arguments.

9    *See* Def. Mot. at 13-14; Pl. Opp'n at 7-8. Accordingly, the Court finds Defendant's

10   argument fails on this ground.

11                  3.    First Amendment Argument

12         Defendant argues if the FDA regulations were interpreted to prohibit Defendant

13   from identifying nutrients present in the Product, such an interpretation would violate the

14   First Amendment. Def. Mot. at 14-15. Plaintiff argues in opposition that the Product

15   Statements concern unlawful activity and are misleading. Pl. Opp'n at 8-9. Further,

16   Plaintiff argues that determining whether the Product Statements are misleading is a

17   factual dispute not to be resolved through a motion to dismiss. *Id.* at 9.

18         The premise for Defendant's First Amendment argument is not present because

19   the Court has not interpreted FDA regulations to prohibit Defendant from identifying

20   nutrients present in the Product. *See* Def. Mot. at 14-15. The Court therefore does not

21   further examine this argument. The Court also notes that it found Statements 1-7

22   described that certain nutrients were present in the Product and were not implied nutrient

23   content claims.

24                  4.    Fortification Policy

25         The Complaint states that the FDA explicitly regulates certain nutrient content

26   claims, such as "more" claims, and where a claim is based on a nutrient that has been

27   added to a food, the food must comply with the FDA's Fortification Policy. Compl. ¶¶ 24-

28   25. "A relative claim using the terms 'more,' 'fortified,' 'enriched,' 'added,' 'extra,' and

                                                19

1  'plus'" may be used only if it is in keeping with the FDA fortification policy. 21 C.F.R.

2  § 101.54(e)(1).

3      Defendant argues in a footnote that Plaintiff does not allege any of the Product

4  Statements are unlawful "more" claims. Def. Mot. at 13 n.3. Defendant argues that the

5  Product Statements cannot be "more" claims because they do not use any of the

6  specified terms. *Id.* Plaintiff argues in opposition that the terms "our" and "unique" are

7  unlawful "more" claims. Pl. Opp'n at 6. Plaintiff further argues that the Product's label

8  clearly says "enriched" above the "our" and "unique" blends to show that the contents

9  have been enriched. *Id.*

10     The Court agrees with Defendant. Despite Plaintiff's arguments to the contrary,

11 the Complaint does not allege that the Product Statements are unlawful "more" claims.

12 Including a description of unlawful "more" claim in the background section of the

13 Complaint describing regulations is not sufficient to allege an unlawful "more" claim. *See*

14 Compl.

15     **D.    Unfair Competition Law "Unfair" Claim (Claim 2)**

16     The Complaint alleges Defendants engaged in unfair practices by "including

17 unlawful nutrient content claims on the Product's labels and thereby selling Products that

18 were not capable of being sold or held legally and which were legally worthless." Compl.

19 ¶ 99. A business practice may be "unfair" even if not specifically proscribed by another

20 law. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1000 (9th Cir. 2023). To support a

21 finding of unfairness to consumers, the court uses a balancing test, which "weigh[s] the

22 utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Id.*

23 (citing *Progressive W. Ins. Co. v. Super. Ct.*, 135 Cal. App. 4th 263, 285 (2005)). There

24 is also a "tethering test," which is applied in competitor cases and therefore, not

25 applicable here. *See id.*

26     Defendant argues that the unfair claim is duplicative of the unlawful claim. Def.

27 Mot. at 15-16 (citing *In re Intel Corp. CPU Marketing, Sales Practices & Prods. Liability*

28 *Litig.*, 2023 WL 7211394 (9th Cir. Nov. 2, 2023) (district court properly dismissed unfair

1    claim where allegations were "coextensive" with previously dismissed fraudulent claim)).

2    Defendant also argues that the unfair claim fails under the balancing test because

3    Defendant's conduct in informing consumers of the nutrients in the Product has utility,

4    and Plaintiff has not alleged any grave harm suffered. *Id.* at 16. Defendant argues

5    Plaintiff alleged she paid for two to four cans of toddler formula, but has not alleged her

6    child suffered any physical harm. *Id.*

7    Plaintiff contends in opposition that the Complaint sufficiently pleads that the

8    Product advertises nutrient content claims unlawfully targeting children under two, which

9    violated various laws. Pl. Opp'n at 10-11. Plaintiff argues the injury is "substantial" to all

10   consumers and not outweighed by any benefit. *Id.* at 11.

11   Here, as set forth above, the Court finds Plaintiff adequately pleads a claim under

12   the "unlawful" prong of the UCL for Statements 8-10. The Court therefore similarly finds

13   Plaintiff adequately establishes a claim under the unfair prong. Accordingly, Defendant's

14   motion to dismiss Plaintiff's unfair UCL claim should be denied.

15       **E.      Fraud-Based Claims (Claims 1, 2, 3, 4)**

16   Plaintiff alleges several claims grounded in fraud, including the CLRA (claim 1),

17   False Advertising Law (claim 3), the "fraudulent" prong of the UCL (claim 2), and

18   common law fraud claims (claim 4). Compl. ¶¶ 81-95, 101, 112-32. Defendant moves to

19   dismiss these claims, arguing Plaintiff fails to plead her claims with particularity as

20   required by Federal Rule of Civil Procedure 9(b) and that reasonable consumers are not

21   misled by the Product Statements. Def. Mot. at 17-21.

22              1.    Legal Standards

23   A claim of fraud "must state with particularity the circumstances constituting

24   fraud." Fed. R. Civ. P. 9(b). To plead fraud with the particularity required by Rule 9(b), a

25   complaint "must identify the who, what, when, where, and how of the misconduct

26   charged, as well as what is false or misleading about the purportedly fraudulent

27   statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th

28   Cir. 2018) ("*Kimberly-Clark Corp.*") (citation omitted); *see Haley v. Macy's, Inc.*, 263 F.

1    Supp. 3d 819, 824 (N.D. Cal. 2017) (stating a plaintiff must "allege with specificity what

2    products they purchased, on what statements they relied in making those purchases,

3    and why those statements were false or misleading."). Rule 9(b)'s heightened pleading

4    standard applies to UCL, False Advertising Law, and CLRA causes of action that are

5    grounded in fraud. *LeGrand*, 655 F. Supp. 3d at 895. Because the same standard for

6    fraudulent activity governs the three statutes, courts often analyze the three statutes

7    together. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089 (N.D. Cal.

8    2017).

9         California's False Advertising Law and the CLRA prohibit false or misleading

10   advertising. Specifically, the False Advertising Law prohibits the dissemination of any

11   statement concerning property or services "which is untrue or misleading, and which is

12   known, or which by the exercise of reasonable care should be known, to be untrue or

13   misleading." Cal. Bus. & Prof. Code § 17500.

14        The CLRA prohibits certain "unfair methods of competition and unfair or deceptive

15   acts or practices undertaken by any person in a transaction intended to result or which

16   results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code

17   § 1770(a). One practice proscribed by the CLRA is "[r]epresenting that goods or services

18   are of a particular standard, quality, or grade . . . if they are of another." *Id.* § 1770(a)(7).

19        The elements for a general fraud cause of action under California law are:

20   "(a) misrepresentation (false representation, concealment, or nondisclosure);

21   (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance;

22   (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Co.*, 567 F.3d

23   1120, 1126 (9th Cir. 2009) (citing *Engalla v. Permanente Med. Group, Inc.,* 15 Cal.4th

24   951, 974 (1997)).

25        The standard for claims under the UCL, False Advertising Law, and CLRA is the

26   "reasonable consumer" test, which requires a plaintiff to show that members of the public

27   are likely to be deceived by the business practice or advertising at issue, or that "the

28   product labeling and ads promoting the products have a meaningful capacity to deceive

22

consumers." *See McGinity*, 69 F.4th at 1097; *Williams v. Gerber Prod. Co.*, 552 F.3d

934, 938 (9th Cir. 2008). The California Supreme Court has recognized that the UCL,

False Advertising Law, and CLRA prohibit explicitly false advertising and advertising that

is "either actually misleading[,] or which has the capacity, likelihood[,] or tendency to

deceive or confuse the public." *McGinity*, 69 F.4th at 1097 (citing *Kasky v. Nike, Inc.*, 27

Cal. 4th 939, 951 (2002)). This "reasonable consumer" test "requires more than a mere

possibility that the label might conceivably be misunderstood by some few consumers

viewing it in an unreasonable manner." *Id.* (internal quotation marks and citations

omitted). Rather, it "requires a probability that a significant portion of the general

consuming public or of targeted consumers, acting reasonably under the circumstances,

could be misled." *Id.* (internal quotation marks and citations omitted).

The Ninth Circuit has also noted that whether a practice is deceptive "is an issue

of fact not generally appropriate for decision on a motion to dismiss" and that it is a "rare

situation in which granting a motion to dismiss is appropriate[.]" *LeGrand*, 655 F. Supp.

3d at 890 (citing *Williams*, 552 F.3d at 938-39).

2.    Analysis

Plaintiff appears to put forth two theories of fraud in the Complaint. The first theory

is that the Product Statements are alleged nutrient content claims that mislead

consumers into believing the Product provides physical health benefits for children under

two years of age, when the Product is actually harmful both nutritionally and

developmentally. *See* Compl. ¶¶ 2, 19, 37, 41, 42, 43, 51, 52, 54, 58, 89, 101, 103, 115,

116; *see also* Pl. Opp'n at 17. The second theory is that the Product confuses

consumers as to the intended age group. *See* Compl. ¶¶ 14, 35, 36, 42, 44; *see also* Pl.

Opp'n at 17.

Defendant argues that Plaintiff's fraud-based claims are insufficient because they

were not pled with particularity and that reasonable consumers would not be misled by

the Product. Def. Mot. at 18-21. The Court finds Plaintiff has adequately pled the who

(Defendant), when (3 months beginning in February 2024), and where (at Target) of the

misconduct charged. *See Kimberly-Clark, Corp.*, 889 F.3d at 964. However, Plaintiff has not sufficiently pled the "how" or "what is false or misleading about the purportedly fraudulent statement, and why it is false." *Id.*

### a.    Product Statements Are Not Misleading

Defendant first argues that Plaintiff's allegations of fraud are similar to claims rejected by the Ninth Circuit in *Davidson*. Def. Mot. at 18 (citing *Davidson*, 106 F.4th 842). Plaintiff argues that *Davidson* does not apply. Pl. Opp'n at 13-14.

In *Davidson*, "the essence of plaintiffs' fraud-based claims is that Sprout's labels misled consumers into believing the products provided health benefits to children under two when the products were in fact nutritionally and developmentally harmful." *Davidson*, 106 F.4th at 852. The Ninth Circuit explained that the district court found plaintiffs had sufficiently alleged the misstatement—"that the nutrient content claims imply that the products provide health benefits for babies"—but plaintiffs failed to sufficiently alleged why this implied message was false, "i.e., that the products were in fact harmful." *Id.* at 853.

Like *Davidson*, Plaintiff alleges the statements are misleading because they claim to provide health benefits, when in fact they are harmful. *See* Compl. ¶¶ 2, 19, 37, 41, 42, 43, 51, 52, 54, 58, 89, 101, 103, 115, 116; *Davidson*, 106 F.4th at 853. Other courts in the Ninth Circuit have also recently applied *Davidson* to find that similar allegations failed to state a fraud claim. *See, e.g.*, *Garland*, 2025 WL 1908401, at *3; *Sanchez I*, 626 F. Supp. 3d at 1119; *Howard v. Gerber Prods. Co.*, 2024 WL 5264036, at *1 (N.D. Cal. Dec. 31, 2024) ("*Gerber II*").

Though Plaintiff alleges that the Product is harmful to children, she does not sufficiently allege what that harm is. For example, the Complaint alleges that the FDA Guidelines recommend that children younger than age two completely avoid foods and beverages with added sugars, and Defendant's Product has eight grams of added sugar. Compl. ¶ 53. The Ninth Circuit in *Davidson* and other courts have rejected a similar argument where the plaintiffs did not explain at what level sugars become harmful or

why levels of sugar in these products could cause harm. *See Davidson*, 106 F.4th at 853; *see also Garland*, 2025 WL 1908401, at *3; *Sanchez v. Nurture, Inc.*, 2023 WL 6391487, at *7 (N.D. Cal. Sept. 29, 2023) ("*Sanchez II*") ("[M]any courts in this district have rejected theories of fraud where Plaintiffs alleged the presence of added sugars rendered a general health-related claim fraudulent.") (citing cases); *Gerber II*, 2024 WL 5264036, at *1. Here, Plaintiff has not alleged at what level added sugar becomes harmful or why levels of sugar in the Product could cause harm. *See* Compl.

The Complaint also cites to many federal regulations to support allegations of harm. *See* Compl. ¶¶ 44-63. Courts in the Ninth Circuit have found that relying on FDA regulations alone is insufficient to meet the Rule 9(b) pleading standard. *See Garland*, 2025 WL 2025 WL 1908401, at *3; *Trazo v. Nestlé USA, Inc.*, 2013 WL 4083218, at *10 (N.D. Cal. Aug. 9, 2013); *Gerber II*, 2024 WL 5264036, at *3. Plaintiff must allege how the statements would be false or misleading to a reasonable consumer, which she has failed to do. *See Davidson*, 106 F.4th at 853; *Garland*, 2025 WL 1908401, at *3; *see also Sanchez II*, 2023 WL 6391487, at *5.

*b.    Product Is Not Confusing About The Intended Age*

As to Plaintiff's second theory of harm that it is unclear who the intended age group for the Product is, Plaintiff has similarly failed to sufficiently allege how the statements are misleading or harmful to a reasonable consumer. In the Complaint, Plaintiff alleges that the Product is intended for ages 12-36 months and is located in the baby food aisle alongside infant formulas. Compl. ¶¶ 14, 35, 36, 42, 44. Plaintiff alleges the FDA has warned that nutrient content claims could be misleading, especially in the context of children under two because there are different recommended daily nutrient intakes for children 0-12 months, 1-3 years, and 4 years and above. *Id.* ¶ 44. Plaintiff also argues the label is misleading because it states the Product is a "toddler drink" in one part, for infants aged "12-36 months", and provides instructions for "babies." Pl. Opp'n at 14. Plaintiff also argues that the "Product cannot assert it is supported by evidence of health benefits for one age group, toddlers, when it also targets babies, a

25

1    different age group." *Id.* at 14-15. Plaintiff further states that the label is inherently

2    misleading because it targets babies and infants under two, but is labeled for up to 36

3    months. *Id.* at 15. Defendant argues in Reply that this is a new theory of

4    misrepresentation not pled in the Complaint. Def. Reply at 12.

5         Plaintiff has not sufficiently alleged with particularity how the statements on the

6    label or location of the Product in the baby food aisle are misleading about the intended

7    age of the Product or harmful to a reasonable consumer. Merriam-Webster Dictionary

8    defines "toddler" as "a young child usually between one and three years old." *Merriam-*

9    *Webster*, https://www.merriam-webster.com/dictionary/toddler (last visited Sept. 15,

10   2025). The Product itself clearly lists the intended age as 12-36 months, which is the

11   definition of toddler. Synonyms of toddler include "baby." *Merriam-Webster*,

12   https://www.merriam-webster.com/thesaurus/toddler (last visited Sept. 15, 2025). "Baby"

13   is defined as "an extremely young child." *Merriam-Webster*, https://www.merriam-

14   webster.com/dictionary/baby (last visited Sept. 15, 2025). It is unclear how a reasonable

15   consumer would be confused about the intended age of the Product when the Product

16   clearly states the age is 12-36 months. Further, Plaintiff alleges that the Product is sold

17   in the baby food aisle, but has not alleged that Defendant had any control over the

18   Product placement in a retail store or why this placement would be misleading. Plaintiff

19   has failed to sufficiently allege how the Product is misleading to a reasonable consumer

20   about the intended age.

21        Accordingly, Plaintiff has failed to plead her fraud-based claims with particularity,

22   and her claims should be dismissed with leave to amend to the extent Plaintiff can allege

23   additional facts to support her fraud claims. *See Lopez*, 203 F.3d at 1126-30.

24        **F.    Unjust Enrichment (Claim 5)**

25        Defendant moves to dismiss the unjust enrichment claim because it is generally

26   not recognized as a standalone cause of action under California law. Def. Mot. at 16-17.

27   Plaintiff argues that unjust enrichment is not duplicative and is permitted by law. Pl.

28   Opp'n at 11.

26

The Ninth Circuit and the California Supreme Court have construed California law to permit a cause of action for unjust enrichment through quasi-contract. *See Russell v. Walmart, Inc.*, 680 F. Supp. 3d 1130, 1132-33 (N.D. Cal. 2023) (citing *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016) and *Hartford Casualty Ins. Co. v. J.R. Marketing, L.L.C.*, 61 Cal.4th 988 (2015)); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)); *see Burton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (holding the district court erred when it dismissed plaintiff's unjust enrichment claim, and acknowledging California law allowed an independent claim for unjust enrichment to proceed). To allege unjust enrichment as an independent cause of action, "a plaintiff must show that a defendant received and unjustly retained a benefit at the plaintiff's expense." *Russell*, 680 F. Supp. 3d at 1133.

Here, Defendant does not otherwise address Plaintiff's unjust enrichment claim besides arguing that it is not a standalone cause of action. Because the Court finds Plaintiff can bring an unjust enrichment claim as discussed above, Defendant's motion to dismiss should be denied on this ground.

### G.    Former Price Advertising Claim (Claim 6)

In her sixth cause of action, Plaintiff brings a claim under California's False Advertising Law, California Business and Professions Code § 17501, which prohibits a business from advertising the price of a product as its former price unless certain conditions are met. *See* Compl. ¶¶ 139-147. Defendant contends the Complaint fails to plead any allegations regarding the former price of the Product. Def. Mot. at 21-22. Plaintiff concedes there is a "scrivener's error" in the Complaint and that she "should have listed the code section as Bus. & Prof. Code § 17500, not § 17501. Pl. Opp'n at 23-24. In its reply, Defendant argues that Plaintiff already alleges a § 17500 claim in her third cause of action. Def. Reply at 14 (citing Compl. ¶¶ 112-23). Defendant is correct. The Court finds that even if Plaintiff did not make an error and brought a claim under § 17500, this claim would be redundant of the third claim under § 17500. Therefore, the

motion to dismiss Plaintiff's sixth claim under § 17501 should be granted without leave to amend.

### H.   Injunctive Relief

Defendant argues Plaintiff does not have standing to seek injunctive relief because she has not made plausible allegations that she will purchase the Product again. *See* Def. Mot. at 22-23. In opposition, Plaintiff argues this question should be resolved with Plaintiff's anticipated motion for class certification. Pl. Opp'n at 24.

A plaintiff must have standing to seek injunctive relief. *See Kimberly-Clark Corp.*, 889 F.3d at 967. A previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical threat of harm." *Id.* at 969. Examples of a threat of further harm may be "the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or "the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 969-70.

Here, Plaintiff alleges that she purchased the Product for her child when he was one year old, and bought approximately two to four cans of the Product in total beginning in February 2024 for about three months. Compl. ¶¶ 65-66. Plaintiff alleges if Defendant had not "unlawfully and misleadingly labeled the Product, Plaintiff would not have purchased it or, at minimum, would have paid less for the Product." *Id.* ¶ 71. However, Plaintiff does not allege that she purchased the product after the three month period. *See* Compl. She also does not plausibly allege or argue that she would like to purchase the Product again in the future but was unable to rely on the Product's advertising of labeling and so will not purchase the Product. *See Kimberly-Clark Corp.*, 889 F.3d at 969-70. Further, Plaintiff has not plausibly alleged or argued that she might purchase the

1    Product in the future, as she may reasonably assume the Product was improved. *See id.*

2    Accordingly, the Court finds Plaintiff fails to allege any actual or imminent future harm,

3    and Plaintiff's claim for injunctive relief should be dismissed with leave to amend. *See*

4    *Gutierrez*, 2025 WL 2307847, at *13.

5    **IV.    CONCLUSION**

6            In conclusion, IT IS HEREBY ORDERED that:

7    1.        Defendant's first request for judicial notice (ECF No. 16) is DENIED, and

8              Corrected Exhibit A (ECF No. 17) is incorporated by reference; and

9    2.        Defendant's second request for judicial notice (ECF No. 28) is GRANTED

10             in part as to Exhibits 1 and 2, and DENIED as to Exhibit 3. Exhibit 3 is

11             incorporated by reference.

12           Further, based upon the findings above, it is RECOMMENDED:

13    1.       Defendant's motion to dismiss (ECF No. 15) be GRANTED in part and

14             DENIED in part as follows:

15             a.      Defendant's motion to dismiss Plaintiff's California Unfair

16                     Competition Law ("UCL") unlawful claim (Claim 2) is GRANTED as

17                     to Statements 1-7 and DENIED as to Statements 8-10;

18             b.      Defendant's motion to dismiss Plaintiff's UCL unfair claim (Claim 2)

19                     is DENIED;

20             c.      Defendant's motion to dismiss Plaintiff's fraud-based claims (UCL

21                     fraudulent prong, California Legal Remedies Act claim, California's

22                     False Advertising Law claim, Cal. Bus. & Prof. Code § 17500 et

23                     seq., and common law fraud) (Claims 1-4) is GRANTED with leave

24                     to amend;

25             d.      Defendant's motion to dismiss Plaintiff's unjust enrichment claim

26                     (Claim 5) is DENIED;

27             e.      Defendant's motion to dismiss Plaintiff's California False Advertising

28                     Law claim, Cal. Bus. & Prof. Code § 17501, (Claim 6) is GRANTED

without leave to amend;

  f. Defendant's motion to dismiss Plaintiff's request for injunctive relief is GRANTED with leave to amend;

2. If Plaintiff chooses to amend her Complaint, she shall have 30 days from the adoption of these findings and recommendations to file an amended Complaint as provided in these findings and recommendations; and

3. If Plaintiff elects to file an amended complaint, it should be titled "First Amended Complaint" with reference to the appropriate case number. An amended complaint must be complete in itself without reference to any prior pleading. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967); E.D. Cal. Local Rule 220. If Plaintiff elects not to file an amended complaint, her current Complaint will proceed on the following claims:  violation of the UCL's unlawful prong and unfair prong as to Product Statements 8-10 (Claim 2); and unjust enrichment (Claim 5).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. This document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the Court within 14 days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  September 22, 2025

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

5, guti.2434.24

30